UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FIDA UL MUSTAFA CHOHAN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 24-2617 (RCL) |
| U.S. DEPARTMENT OF STATE, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Plaintiff, appearing *pro se*, filed a document captioned Particulars of Claim, which is construed as a civil complaint. Defendant State Department has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons explained below, Defendant's motion will be GRANTED.

### I. BACKGROUND

**A. Factual Allegations**

Plaintiff is a citizen and resident of Pakistan. Compl., ECF No. 1 at 1 ¶ 1. In September 2013, Plaintiff "obtained a 5-year U.S. visit visa on his passport . . . to attend a carbon reduction seminar in San Francisco." *Id*. ¶ 3. He visited the United States from October 13, 2013, to November 24, 2013, and then returned to Pakistan. *Id*. ¶¶ 4, 6. During his visit, Plaintiff was admitted to City College of San Francisco. So, in December 2013, Plaintiff applied to the U.S. Embassy in Islamabad, Pakistan, to change the status of his visa to a student visa. The "Visa officer not only refused the . . . student visa but also cancelled" Plaintiff's "visit visa verbally saying that when an applicant appl[ies] for status change his previous visa also [is] cancelled."

*Id*. ¶¶ 7-8.  The officer "put black ink on" Plaintiff's visa sticker "and stamped 'Cancelled Without Prejudice', " which "damaged other pages" of Plaintiff's passport[.]"  *Id*. at 2 ¶¶ 9, 10.

In 2016, Plaintiff applied for an Australian visa "to get higher training in the field of Environment sponsored by his Employer."  *Id*. ¶ 11.  On February 3, 2016, the U.S. Embassy informed the Australian Embassy that Plaintiff's U.S. visa was cancelled "because of admitting false documents," *id*. ¶ 13, which resulted in the denial of Plaintiff's application for an Australian visa and his missing "a golden chance to get higher training in Australia."  *Id*. ¶ 14.  On March 8, 2016, Plaintiff "complained" to the "hotline" of the State Department's Office of Inspector General and received a "final response in April 2016."  *Id*. ¶ 16.

In the response letter dated April 5, 2016, the Chief of Outreach and Inquiries Division for Visa Services explained that after Plaintiff's "latest" interview at the U.S. Embassy in Islamabad, Pakistan, on December 15, 2014, "and a thorough review of [his] visa application," the consular officer determined that Plaintiff was "inadmissible to the United States under section 212(a)(6)(E)" of the Immigration and Nationality Act based on information that he had "manufactured fraudulent documents for at least one U.S. visa applicant in order to procure immigration benefits for the individual who was not entitled to them."  Compl. Ex., ECF No. 1-1 at 5.  The letter further informed Plaintiff that because the "authority to issue or refuse visas is vested solely in consular offices abroad," the State Department in Washington, D.C. "cannot overturn consular decisions."  *Id*.

B.  **Procedural Posture**

On August 26, 2024, Plaintiff filed this lawsuit claiming that (1) his "damaged Passport with black ink . . . has tarnished [his] travel history," (2) he has "been unable to get [a] visa [from] any other country" because the damaged pages create "doubts to other country visa

officers," and (3) as a result, he has "been unable to get any higher training or studies." Compl. at 3 ¶ 18. Plaintiff seeks unspecified "compensation" and an order compelling the State Department "to issue a 5-year working visa to recover the past damages." *Id*. ¶ 19. On January 8, 2025, Defendant filed the instant motion to dismiss. Plaintiff filed his opposition on February 11, 2025, Defendant filed its reply on February 18, 2025, and Plaintiff filed a surreply on March 7, 2025. The motion is ripe for review.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(1)

A defendant in a civil action may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). If the Court lacks subject-matter jurisdiction, it must dismiss the claim or action. Fed. R. Civ. P. 12(h)(3). Article III of the Constitution vests in the federal court authority to adjudicate "Cases" and "Controversies." U.S. Const., art. III, § 2. For a lower federal court to have subject-matter jurisdiction over a case or controversy, Congress must provide such jurisdiction by statute within the bounds of the Constitution's grant of jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A court considering a motion to dismiss for lack of subject-matter jurisdiction must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020). "However, those factual allegations receive closer scrutiny than they do in the Rule 12(b)(6) context," and the court "may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim." *Id*. (internal quotation marks and citations omitted). The plaintiff "bears the burden of proving subject-matter jurisdiction by a

preponderance of the evidence." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

### B. Motion to Dismiss Under Rule 12(b)(6)

A defendant in a civil action may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018). However, "[a] court need not accept a plaintiff's legal conclusions as true, . . . nor must a court presume the veracity of legal conclusions that are couched as factual allegations." *Id*. (citation omitted); *see Iqbal*, 556 U.S. at 678 ("[T]hat a court must accept as true all of the [factual] allegations contained in a complaint is inapplicable to legal conclusions.").

### III. DISCUSSION

Defendant argues first that Plaintiff's claims are barred by the consular nonreviewability doctrine, which generally bars judicial review of a consular officer's decision to grant, deny or revoke a visa. *See* Def.'s Mot. to Dismiss and Mem. in Support, ECF No. 6 at 3-5. The Court agrees.

Plaintiff counters that he "does not seek judicial review of a visa refusal or revocation" but rather challenges the U.S. Embassy's "wrongful dissemination of false information . . . to the Australia High Commission." Pl.'s Resp. to Def's Mot. to Dismiss, ECF No. 8 at 1. But "courts are not required to take a plaintiff's word that [he] is not challenging the visa denial" and "have applied the doctrine of consular nonreviewability even to suits where a plaintiff seeks to challenge a visa decision indirectly." *Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017) (collecting cases). Here, Plaintiff's entitlement to relief necessarily hinges on judicial review of the consular officer's decision and a finding favoring Plaintiff's conclusions that the U.S. Embassy "wrongfully" conveyed "false" information to the Australian authorities. *See Malyutin v. Rice*, 677 F. Supp. 2d 43, 46-47 (D.D.C. 2009), *aff'd.*, No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010) (per curiam) ("Absent judicial review" of the underlying visa decision "there can be no judicial determination that the alleged conspiracy that produced" the decision "constitutes a legal injury that proximately caused the plaintiff's damages."); *Chun v. Powell*, 223 F. Supp. 2d 204, 207 (D.D.C. 2002) (Because a court's "scrutiny of the predicate for the [visa] decision necessarily causes" the court "to interfere with the process of the decision which it has been precluded from reviewing," a plaintiff "cannot make an end-run around nonreviewability of the decision by challenging its foundation" for some other purpose.) (internal quotations and citation omitted)).

The consular nonreviewability doctrine "holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). Claims "otherwise barred by" the doctrine "are subject to judicial review . . . if a 'statute expressly authoriz[es] judicial

review of consular officers' actions." [1] *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024-25 (D.C. Cir. 2021), quoting *Saavedra Bruno*, 197 F.3d at 1159 (alteration in original). Plaintiff cites the Privacy Act, 5 U.S.C. § 552a, the Federal Tort Claims Act, (FTCA), 28 U.S.C. §§ 2671-80, and the Administrative Procedure Act (APA), 5 U.S.C. § 706. Pl.'s Surreply, ECF No. 10 at 3. Unsurprisingly, Plaintiff points to no statutory language that "expressly" authorizes review of a consular's decision to deny or revoke a visa. *See Colindres v. U.S. Dep't of State*, 575 F. Supp. 3d 121, 140 (D.D.C. 2021), *aff'd*, 71 F.4th 1018 (D.C. Cir. 2023) (noting that "Plaintiffs have failed to point to a single case finding statutory authorization for judicial review of a consular visa decision, and the Court has found none"); *accord Cevallos v. U.S. Department of State*, No. 22-cv-2602 (JDB), 2023 WL 6276622, at *4 (D.D.C. Sept. 26, 2023) ("The Court is not aware of any case in this circuit applying the [statutory] exception."). It is established, moreover, that the consular nonreviewability doctrine, which predates the APA, is "one of the 'limitations on judicial review' *unaffected* by [the APA's] opening granting a right of review to persons suffering 'legal wrong' from agency action." *Saavedra Bruno*, 197 F.3d at 1161 (citing 5 U.S.C. § 702(1),(2) (emphasis added)).

Here, the causal relationship between the consular officer's decision and Plaintiff's injuries, *i.e.*, missed educational opportunities due to travel impediments, is inescapable. Therefore, the Court will grant Defendant's Rule 12(b)(6) motion to dismiss. *See Baan Rao*, 985 F.3d at 1027 (clarifying that "[d]ismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)").

.

---

[1] The other "narrow" exception to the nonreviewability doctrine permitting "an American citizen to challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights," *Baan Rao*, 985 F.3d at 1024-25, does not apply here.

Even if Plaintiff's statutory claims could be considered, they would be dismissed under Rule 12(b)(1). First, Plaintiff lacks standing to sue under the Privacy Act, which " is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). This is because the Privacy Act protects only U.S. citizens or aliens lawfully admitted for permanent residence, and Plaintiff is neither. *See Soto v. United States Department of State*, 244 F. Supp., 3d 207, 208 (D.D.C. 2017) (citing 5 U.S.C. 552a(a)(2) (other citations omitted)). Although "the Judicial Redress Act expanded the right to pursue claims under the Privacy Act to citizens of designated foreign countries," *Asylum Seekers Trying to Assure their Safety v. Lechleitner*, 2023 WL 8619411, at *8 (D.D.C. Dec. 13, 2023) (Lamberth, J.) (citing Judicial Redress Act of 2015, Pub. L. No. 114-126, 130 Stat. 282 (2016)), Pakistan is not a "covered country." 82 Fed. Reg. 7860 (Jan. 23, 2017).

Second, Plaintiff's claim for "compensation," Compl. ¶ 19, is barred by sovereign immunity. The "United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). This doctrine applies to federal agencies and employees sued in their official capacities, and a waiver of immunity "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). The FTCA waives the government's immunity for certain claims for damages but "only to the extent that a private person in like circumstances could be found liable in tort under local law." *Hornbeck Offshore Transp., LLC v. U.S.*, 563 F. Supp. 2d 205, 210 (D.D.C. 2008), *aff'd*, 569 F.3d 506 (D.C. Cir. 2009) (citing 28 U.S.C. §§ 2674, 1346(b)(1)); *see Horn v. U.S. Dep't of Veterans Affs.*, 941 F. Supp. 2d 137, 139 (D.D.C. 2013), *aff'd*, No. 13-5144, 2013 WL 5975966 (D.C. Cir. Oct. 17, 2013) ("The FTCA is the exclusive remedy for seeking monetary damages

against the United States for certain torts."). "[T]he power to exclude aliens" is unique to the federal government, *Colindres v. United States Department of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023), and "it is virtually axiomatic that the FTCA does not apply where the claimed [tort] arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs," *Hornbeck Offshore Transp., LLC v. U.S.*, 569 F.3d 506, 509 (D.C. Cir. 2009) (second alteration in original) (internal quotation marks and citations omitted)); *see Baan Rao*, 985 F.3d at 1024 (noting that the "Immigration and Nationality Act , 8 U.S.C. §§ 1101 *et seq.*, grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.' ") (citation omitted)).

Plaintiff cannot plausibly satisfy the FTCA's "private analogue requirement," *Buzzanca v. District of Columbia*, 523 F. Supp. 3d 64, 69-70 (D.D.C. 2021), by identifying a tort under District of Columbia law that attaches liability to a private person for the claims asserted. Even if he could, the FTCA's waiver "does not apply" to claims, as here, "arising out of . . . misrepresentation [or] deceit," 28 U.S.C. § 2680(h), or "in a foreign country," *id*. § 2680(k).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. A separate order accompanies this Memorandum Opinion.

_____/s/_____  
ROYCE C. LAMBERTH  
United States District Judge

Date: September 3, 2025